| | | |
|---|---|---|
| **SUAD MUHELJIC and** | ) | |
| **RIAD MUHELJIC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Judge Sharp** |
| | ) | **No. 2:14-00051** |
| **BANK OF AMERICA, N.A.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

This action, which arose out of a mortgage foreclosure, was originally filed in the Chancery Court for White County, Tennessee, and removed to this Court. Plaintiffs, brothers Suad and Riad Muheljic, have filed a Motion to Remand (Docket No. 12), to which Defendant Bank of America, N.A. ("BANA") has responded in opposition (Docket No. 19). Defendant has filed a Motion to Dismiss (Docket No. 6), which Plaintiffs oppose (Docket No. 18). The Court does not reach the Motion to Dismiss because it finds that this case was improperly removed and must be remanded.

## I.

According to the allegations in the Complaint, Plaintiffs (who are from Bosnia and are not proficient in English) purchased a home located at 876 Luna Road in Sparta, Tennessee on May 29, 2011. After Suad lost his job in 2009, and Riad's paycheck for employment as a truck driver was not enough to cover the bills, Plaintiffs had trouble making their mortgage payments.

Defendant threatened foreclosure in 2010, but the brothers were able to work out an agreement and the foreclosure sale was cancelled. However, in early 2012, Plaintiffs again faced financial difficulties and, while they continued to make payments, they could not pay the entire

amount due on the note. Their partial payments were refused and returned.

In October 2012, Plaintiff submitted a hardship letter to BANA in support of a loan modification. Nevertheless, on February 25, 2013, Shapiro & Kirsch, LLP, as substitute trustee, sent Plaintiffs notices of a trustee's sale that was scheduled to occur on March 28, 2013. Plaintiffs claim that, after receipt of those notices, they were assured by Jeff Smith, a BANA Customer Service Representative, that their request for a loan modification was pending, and that the foreclosure sale would be cancelled.

During this same time period, Plaintiffs looked for alternatives to foreclosure and discovered that filing bankruptcy might be an option. They contacted a bankruptcy attorney in April 2013 and learned that a foreclosure sale of their property had already taken place.

On July 3, 2014, Defendant sent a letter to Plaintiffs indicating that Mr. Smith had told them by phone on March 13, 2013, that their application for a loan modification had been denied. That same letter also stated, however, that the bank would review their loan for possible workout options.

The Complaint is in six counts, all based on state law: Count I, Breach of Contract; Count II, Tennessee Consumer Protection Act, ("TCPA"), Tenn. Code Ann. § 47-18-104(b)(12); Count III, Unconscionability; Count IV, Promissory Estoppel; Count V, Negligent Misrepresentation; and Count VI, Equitable Estoppel. Plaintiffs request that they be granted equitable relief in the form of recision of the foreclosure sale that occurred on March 28, 2013. They also seek actual damages under the TCPA, reasonable costs, and attorney's fees.

## II.

Defendant removed this action on diversity jurisdiction grounds. There is no dispute that the parties are diverse – Plaintiffs are Tennessee residents and BANA, a federally chartered national

banking association, maintains its offices in North Carolina.  See Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2011) (a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located").  The parties do dispute, however, whether the jurisdictional amount has been met in this case.

## A.

To invoke federal court diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Where, as here, "'a plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' a removing defendant must prove by a 'preponderance of the evidence' that the amount in controversy exceeds the jurisdictional threshold."  Nowicki-Hockey v. Bank of Am. N.A., 2014 WL 5786667, at *2 (6th Cir. Nov. 6, 2014) (quoting Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993)).  In other words, "the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000."  Everett v. Verizon Wireless, 460 F.3d 818, 822 (6th Cir. 2006) (quoting Gafford, 997 F.3d at 158).

When a party seeks equitable, declaratory, or injunctive relief, "'the amount in controversy is measured by the value of the object of the litigation.'"  Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co., 621 F.3d 554, 560 (6th Cir. 2010) (quoting Hunt. v. Wash. State Apple Adver. Comm., 432 U.S. 333, 347 (1977).  Moreover, "[i]t is generally agreed in this circuit that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'"  Woodmen of the World v. Scarbro, 129 F. App'x 194, 195-96 (6th Cir. 2005) (quoting Buckeye Recyclers v. CHEP USA, 228 F. Supp. 2d

818, 821 (S.D. Ohio 2002)).[1]

**B.**

The Sixth Circuit has yet to address the question of how to assess the amount-in-controversy in cases involving foreclosure. Courts within this circuit have generally divided into two camps. "The majority of courts have held that the amount is determined by the fair market value of the property, while . . . other courts have used the amount owed on the mortgage loan." Rossi v. SunTrust Mort., Inc., 2011 WL 6888630, *2 (M.D. Tenn. Dec. 29, 2011); see also; McGhee v. Citimortgage, Inc., 834 F. Supp. 2d 708 (E.D. Mich. Dec. 19, 2011) ("A majority of courts addressing the valuation issue have found that, in the context of wrongful foreclosure, the amount in controversy is measured by the market value of the property.").

Having reviewed the cases, the Court finds that the fair market approach is the better method for determining the amount in controversy[2] because, as one court explained, the fair market approach

> best conforms to the requirement that the Court consider the amount in controversy "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007). The plaintiff here is attempting to quiet title to a property; the value to him of that relief would be the market value of the property he wishes to possess. Because the property is the object of the litigation, the market value of the foreclosed property is the best measure of the amount in controversy in this case.

---

[1] The Court notes that the Sixth Circuit has recently observed that "whether courts may assess the jurisdictional amount in controversy from the perspective of either party (an 'either viewpoint rule'), or only from the plaintiff's perspective" had divided the circuit, but "[s]o far, we have sidestepped this sedgy terrain." Siding and Insulation Co., Inc. Acuity Mut. Ins. Co., 754 F.3d 367, 372 (6th Cir. 2014). The Court also notes that Woodmen is an unpublished opinion yet the same language about it being "generally agreed in this circuit" that the amount is determined from plaintiff's perspective appears in Smith v. Nationwide Prop. and Cas. Ins. Co., 505 F.3d, 401, 407 (6th Cir. 2007), a published decision. Regardless, Defendant does not argue that the amount in controversy should be determined solely from its perspective.

[2] Even under the minority approach, which looks at the amount owed, the jurisdictional amount does not appear to be met in this case because, as of July 11, 2013, the outstanding balance on the mortgage loan was $64,541.80. (Docket No. 13-2 at 1).

4

McGhee, 834 F. Supp. 2d at 711–712. Moreover, "[w]hen construing the amount in controversy requirement of a federal statute limiting the appellate jurisdiction of the federal courts, the Supreme Court once stated that 'a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected.'" Johnson v. Shank, 2014 WL 794760, at * 5 (S.D. Ohio Feb. 27, 2014) (quoting Smith v. Adams, 130 U.S. 167, 175 (1889)).

Under the majority approach, there is a further split, having to do with how to assess the fair market value. "Several courts analyzing this issue have determined that the sheriff's sale price demonstrated the fair market value of the property." Williams v. JP Morgan Chase Bank, N.A., 2012 WL 6150742, at *3 (E.D. Mich. Dec. 11, 2012) (collecting cases). Other "courts considering how to determine the amount in controversy in foreclosure cases have adopted a market analysis approach as the best measurement of the fair market value of the property." Id . In "conclud[ing] that market analysis is a more reliable indicator of actual fair market value than is the price for which the property was sold at the sheriff's sale," the court in Williams explained:

> At a Sheriff's sale, the price may be influenced by the amount due on the loan, . . .; and there may also be only one bidder at the sheriff's sale. . . . Both of these factors may cause a sheriff's sale price to deviate from the actual market value of the property. A comparative market analysis that assesses the actual market demand for comparable, neighboring residential properties is more likely to accurately reflect the fair market value of the property in question.

Id. See also Golden v. Wells Fargo Bank, N.A., 2012 WL 1130547, at *2 (E.D. Mich. April 4, 2012) ("This Court declines to use a sheriff's sale, in which the property was purchased by the very entity that owned the mortgage, as a proxy for fair-market value.").

This Court need not weigh in on this subsidiary issue because Plaintiffs have presented

evidence which shows that both amounts are far below the $75,000 threshold. According to the Substitute Trustee's Deed, the property was sold to BANA at the foreclosure sale for $40,000. (Docket No. 13-3 at 1). In an Affidavit, Barbara Madge, an Affiliate Broker with ERG-Elite Realty Group, places the fair market value of the property at $24,000 and opines that the proper list price for the property would be $29,900.00.

Defendant has presented nothing which challenges these figures, other than to assert that Ms. Madge's Affidavit is "self-serving." (Docket No. 15 at 3). "[I]ndeed, it would be odd for a party to submit an affidavit that was not self-serving in the sense that it provides support for [their] claim." Barahona-Carona v. Holder, 417 F. App'x 397, 399, n.1 (5th Cir. 2011); see United States v. Shumway, 199 F.3d 1093, 1103 (9th Cir. 1999) (the "affidavit was of course 'self-serving,' . . . otherwise there would be not point in submitting it"). But even if Ms. Madge's Affidavit is "self-serving" simply because it favors Plaintiffs, this does not detract from the fact that she is a real estate broker with ten years experience, that she prepared her opinion "in the ordinary course of [her] business determining the price of identified real estate," that she reached her conclusion after considering comparables (both recently sold and listed), that she recognized the difficulty in securing financing for older model manufactured homes, such as Plaintiffs, or that BANA has not provided affidavit or declaration setting forth the fair market value based upon comparables.

Rather than accepting Ms. Madge's assessment, or the sheriff's sale for that matter, Defendant argues that the actual fair market value is $89,700, which is the property tax assessment value placed on the property. This is an interesting position to take because, in its Memorandum in support of its Motion to Dismiss, Defendant argues that "it is well established that under Tennessee law, absent some 'irregularity of some sort, the value of the property at foreclosure sale

will not be looked into and will be presumed to reflect the property's fair market value'" and "[a]s such, the sales price paid at the foreclosure sale establishes the fair market value of the property." (Docket 7 at 6, quoting <u>Fifth Third Bank v. Dial Prop., LLC</u>, 2011 WL 588148, at *4 (M.D. Tenn. Feb. 10, 2011).

Regardless, Defendant has not cited, and this Court has not found, any cases in this circuit which indicate that the property tax assessment is a proper measure of damages in home foreclosure cases. That may be because "property tax valuations certainly are not conclusive as to the value of a parcel of real estate," <u>Partin v. Partin</u>, 2011 WL 1485615, at *6 (Tenn. Ct. App. April 20, 2011), and "[i]n Tennessee" may "not [be] admissible to prove the value of a parcel or any potion thereof." <u>City of Murfreesboro v. Worthington</u>, 1997 WL 772137, at *3 (Tenn Ct. App. Dec. 17, 1997); <u>see also</u>, <u>In re Northern</u>, 294 B.R. 821, 828 n.9 (Bktrcy E.D. Tenn. 2004) ("Tennessee courts do not consider tax appraisals credible evidence of the market value of real property.").

## C.

Defendant argues that even utilizing the $24,000 or $40,000 figures advanced by Plaintiff, the amount in controversy requirement is still met because Plaintiff seeks to recover under the TCPA, which allows for attorney's fees and treble damages. That is, adding attorney's fees and/or tripling any of the amount suggested by Plaintiffs would boost the amount in controversy to over $75,000.

In considering the amount in controversy, a court may consider that a statutory provision allows for the trebling of damages. <u>Rosen v. Chrysler Corp.</u>, 205 F.3d 918, 822 (6th Cir. 2000); <u>Gene and Gene LLC v. BioPay, LLC</u>, 541 F.3d 318, 324 (5th Cir. 2008); <u>Chabner v. United of Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1046 n. 3 (9th Cir.2000). Further, "reasonable attorney fees,

when mandated or allowed by statute, may be included in the amount in controversy for purposes of diversity jurisdiction." Charbat v. GVN Michigan, Inc., 561 F.3d 623, 630 (6th Cir. 2009) (citing Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376 (6th Cir. 2007)).

While Plaintiffs request attorney's fees, and the TCPA states that "upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs," Tenn. Code Ann. § 47-18-109(e)(1), it seems doubtful that fees in excess of $35,000 or $51,000 would be awarded, particularly since the Court's experience is that most actions based upon foreclosure are ultimately decided on the papers. Yet such an award of fees would be required to boost the amount in controversy to over $75,000, assuming the Court were inclined to award attorney's fees. See Meredith v. Weller, 2012 WL 219082, at *11 (Tenn. Ct. App. Jan. 25, 2012) (collecting cases) ("The decision whether or not to award attorney fees pursuant to the TCPA is reviewed for abuse of discretion.").

Attorney fees and treble damages together present a different issue because the fair market value trebled is either $72,000 or $120,000, to which attorney's fees may be added. However, whether to award treble damages is also a matter of discretion, Wilson v. Esch, 166 S.W.3d 729, 731 (Tenn. Ct. App. 2004), because the TCPA specifically states that "[i]f the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court *may* award three (3) times the actual damages sustained[.]" Tenn. Code Ann. § 47–18–109(a)(3)(2001) (emphasis added).

"In determining the amount in controversy, the plaintiff is the master of his complaint,'" and, as such, "'can plead to avoid federal jurisdiction,'" meaning "'that subject to a good faith requirement'" he "'may sue for less than the amount [he] may be entitled to if [he] wishes to avoid

federal jurisdiction and remain in state court.'" Smith, 505 F.3d at 407 (quoting, Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998–99 (9th Cir. 2007)). Here, Plaintiffs specifically requested attorney's fees under the TCPA, but did not request treble damages. Given that treble damages are discretionary and given that Plaintiffs did not request them, query whether it is "more likely than not" that Plaintiff would be awarded such damages.

This Court need not answer the query because there is a more fundamental problem with Defendant's reliance on the TCPA claim: "Tennessee courts have found that the TCPA does not apply to mortgage foreclosure proceedings." Hossain v. Ocwen Loan Servicing, LLC, 2014 WL 4347620, at *6 (M.D. Tenn. 2014). As this Court has stated:

> Tennessee courts, both state and federal, have held that the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings. See, Dauenhauer [v. Bank of New York Mellon, 2013 WL 2359602, at *9 [M.D. Tenn. May 28, 2013]) (stating that it is settled law in Tennessee that allegedly deceptive acts in foreclosure proceedings are not within the ambit of the TCPA); Malone v. U.S. Bank Nat" Ass'n, 2013 WL 392487, *5 (W.D. Tenn. Jan.30, 2013); Pugh v. Bank of Am., 2013 WL 3349649, at *7 (W.D. Tenn. July 2013) ("the TCPA does not apply to foreclosure proceedings"); Flynn v. GMAC Mortg., LLC, 2011 WL 4708858, at *2–3 (E.D. Tenn. Oct. 4, 2011) (dismissing the plaintiff's TCPA claim because "the TCPA does not apply to repossession and collateral disposition activities by creditors, including foreclosure activities"); Paczko v. Suntrust Mtg., Inc., 2012 WL 4450896, at *2 (Tenn. Ct. App. Sept.25, 2012) ("the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings").

Jestes v.Saxon Mtg. Serv., Inc., 2014 WL 1847806, at *12 (M.D. Tenn. May 08, 2014). This holds true even where, as here, an allegation is made that the lender failed to properly consider a loan modification because "'courts applying Tennessee law have consistently held that a lender's actions relating to foreclosure and debt collection, even when pursuing loan modification, are not covered by the TCPA.'" Id. (quoting Brooks v. Wells Fargo Bank, N.A., 2014 WL 345737, at *6 (M.D.Tenn. Jan.30, 2014) (collecting cases)). Defendants recognize as much because, in its Memorandum in

support of Motion to Dismiss, it moves to dismiss Plaintiffs' TCPA claim because that statute does not apply to foreclosure proceedings or loan modifications. (Docket No. 7 at 14-15).

In making the foregoing observations, the Court is not holding that Plaintiffs have not stated viable TCPA claim. In fact, a federal court has no power to rule on the merits of a claim when it has no jurisdiction. <u>Steel Co. v. Citizens for a Better Environ.</u>, 523 U.S. 83 (1998). "But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction," <u>Henderson v. Shinseki</u>, ___ U.S. ___, 131 S.Ct. 1197, 1202 (2011), which in this case requires determining whether Defendant has shown by a preponderance of evidence that the amount-in-controversy exceeds $75,000. Given that this Court has adopted the approach which values this litigation at either $24,000 or $40,000, that treble damages under the TCPA are discretionary (and Plaintiffs does not request them), and that TCPA claims in foreclosure and loan modification case have been rejected on numerous occasions, the Court cannot say that it is more likely than not that the $75,000 threshold exists in this case.

## III.

On the basis of the foregoing, the Court will enter an Order remanding this case to the White County Chancery Court.

_Kevin H. Sharp_
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE